IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, ) ) | | |
| Plaintiff, ) ) | | |
| v. ) ) | | 1:06cv792 (JCC) |
| KEVIN M. CLARKE, ) ) | | |
| Defendant. ) | | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Kevin M. Clarke's Motion to Alter or Amend Judgment and Motion for Extension of Time.  For the following reasons, the Court will deny Defendant's Motions.

### I.  Background

This case arises out of a claim that Defendant Kevin M. Clarke ("Mr. Clarke") perpetrated insurance fraud against Plaintiff Provident Life and Accident Insurance Company ("Provident").  On July 11, 1997, Mr. Clarke met with an insurance agent and completed an application for disability insurance from Provident.  In his application, Mr. Clarke denied having been treated for or having any known indication of several disorders, and indicated that he had not had any medical or physical disorder, checkup, or consultation within five years of

1

the application that he did not list.  Provident issued a disability insurance policy (the "Policy") to Mr. Clarke effective September 16, 1997.  On or about July 24, 2001, Mr. Clarke submitted a claim for long term disability payments under the Policy because of a disability from multiple sclerosis.  Provident began paying disability benefits on September 28, 2001 and began an investigation of Mr. Clarke's claim, wherein it learned that Mr. Clarke misrepresented his medical history and pre-existing multiple sclerosis diagnosis in his application.  Provident then rescinded the Policy and tendered a return of the premium check to Mr. Clarke, which he refused to cash.  On August 4, 2006, Provident instituted litigation seeking rescission of the Policy and restitution from Mr. Clarke in the amount of disability benefits paid under the Policy, approximately $186,000.

A settlement conference was held before Magistrate Judge Barry R. Poretz on August 28, 2007 at the joint request of the parties.  During the conference, the parties agreed on terms of a settlement, which Provident memorialized in writing (the "Agreement") and which was signed by both parties, along with express statements from both parties that they accepted its terms.  The Agreement provides for a mutual release of all claims, rescission of the Policy, and an acknowledgment that Mr. Clarke will receive no further payment from Provident.  In

consideration for the agreement, Provident agreed to forgive the amount already given Mr. Clarke for disability payment and to pay Mr. Clarke $10,000 by check which would be mailed within 10 days of his signing an order dismissing all claims in the case.  On September 7, 2007, Mr. Clarke faxed a letter to Provident's attorney stating that he "decided . . . to reject the offer you made on August 28, 2007, and I accepted at the settlement conference."  Ex. 7 to Def.'s Reply Mem.  Provident responded to Mr. Clarke with a reminder that the Agreement was binding and a request that he sign an enclosed dismissal order and accept the check that would follow Provident's receipt of the signed order.

After receiving no further communication from Mr. Clarke, on September 18 Provident filed a Motion to Enter Dismissal Order and for Enforcement of Settlement Agreement.  On September 28, 2007, Mr. Clarke sent a letter to the Court[1] asking it to nullify the Agreement on the ground that his disability had caused him to experience a high degree of anxiety during the settlement conference.  Provident filed a Reply Memorandum in Support of its Motion to Enter Dismissal Order and for Enforcement of Settlement Agreement on October 9, 2007.  A Motion Hearing was held before the Court on October 15, 2007, at which Mr. Clarke insisted that he was represented by counsel who was

---

[1] The recipient of Mr. Clarke's letter was the Clerk of the United States District Court for the Eastern District of Virginia, but this Court treated the letter and its accompanying documents as a Motion to Nullify the Settlement Agreement for the purposes of this proceeding.

3

unable to make an appearance that day.  The Court ordered a continuance until November 2, 2007 to allow for counsel to be present.  After that hearing, at which Mr. Clarke's counsel was present, the Court found that a settlement agreement had been reached and entered an Order granting Plaintiff's Motion for Enforcement of Settlement Agreement, and denying Defendant's Motion to Nullify the Settlement Agreement (the "Order").  At the conclusion of the hearing, Mr. Clarke accepted a settlement check from Provident in the amount of $10,000 (the "Settlement Check"), the proceeds of which are in his attorney's trust account.

On December 19, 2007, Mr. Clarke filed a Motion to Alter or Amend Judgment and a Motion for Extension of Time to File Notice of Appeal.  On January 2, 2008, Provident filed its opposition to Mr. Clarke's Motions, and Mr. Clarke responded on January 15, 2008.  These Motions are currently before the Court.

## II. Analysis

### A. Motion to Alter or Amend Judgement

The Federal Rules of Civil Procedure mandate that "[a] motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  The Court entered judgment November 5, 2007, giving Mr. Clarke until November 15, 2007 to file a motion to alter or amend.  Mr. Clarke filed his motion on December 19, 2007, more than a month after the time allotted by the Federal Rules.  His Motion is

4

therefore untimely and shall be struck, without need for the Court to reach its merits.

### B. **Motion for Extension of Time to Appeal**

The Federal Rules of Appellate Procedure hold that "[i]n a civil case . . . the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a). There is an exception allowing that "[i]f a party timely files in the district court" a motion "to alter or amend the judgment under Rule 59," then "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." *Id.* Mr. Clarke filed his notice of appeal more than 30 days after this Court's Order. In addition, because Mr. Clarke did not timely file his Rule 59 motion, the exception for a motion to alter or amend does not apply. However, the Federal Rules allow the Court to extend the time for Defendant to file a notice of appeal if he "so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and . . . that party shows excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A). Mr. Clarke filed his Motion within the 60 day period provided by the Rule, and thus this Court must determine whether he has shown excusable neglect or good cause.

The Supreme Court has held that the determination of whether "excusable neglect" has occurred takes "account of all relevant circumstances surrounding the party's omission"

5

including "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993). The Fourth Circuit has held that this "'good cause' standard is only applicable to motions for enlargement of time filed within thirty days of the entry of judgment." *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 533 (4th Cir. 1996). Because Mr. Clarke filed his Motion after thirty days had passed from the entry of the Order, he cannot take advantage of the lesser good faith standard. His motion is subject to the higher "excusable neglect" standard. In the Fourth Circuit, "[t]he most important of the factors identified in *Pioneer* for determining whether 'neglect' is 'excusable' is the reason for the failure to file the notice of appeal within thirty days of the entry of judgment." *Id.* at 534. A showing of "'[e]xcusable neglect' is not easily demonstrated, nor was it intended to be." *Id.*

Applying that standard to the facts here, the main factor for the Court to consider is Mr. Clarke's reason for failing to file. Mr. Clarke claims that his MS led to his having "suffered anxiety attacks and more rapid advances in his symptoms which has prevented [sic] him from being responsive," and that he has suffered from a "'foggy' mental state." Def.'s Mot. to Alter

or Amend J. and Mot. for Extension of Time at 1.  Illness alone is not generally enough to meet the heavy burden of showing "excusable neglect."  *See, e.g. Gruber v. UNUM Life Ins. Co. of Am.*, 195 F. Supp. 2d 711, 716 (D. Md. 2002).  Mr. Clarke told the Court that his doctor was going to call during the Motions Hearing on Friday, February 29, a phone call that did not occur.  There is no evidence that Mr. Clarke was so impaired as to be unable to file, particularly since, as he admitted during the Settlement Conference, he has good days along with his bad days.  Although Defendant is not an attorney, he has represented himself throughout this proceeding.  Despite the Court's urging, and Mr. Clarke's retention of an attorney for at least a portion of the Settlement proceedings and subsequent Motions, Mr. Clarke chose not to ask for a lawyer's assistance with respect to these motions.  Mr. Clarke's decision to make continued filings and appearances in this Court without a lawyer, even though one was available to him, mediate against his ability to now claim his illness as a reason for excusable neglect.

      The Court must also consider the effect Mr. Clarke's filing delay has on Provident.  It appears as though Provident is not significantly prejudiced by the filing delay in itself, and Mr. Clarke's tardiness will have little impact on judicial proceedings.  However, at the November 2, 2007 hearing, Mr. Clarke accepted the Settlement Check from Provident, accepting the benefits of the Settlement.  Provident argues that Mr.

Clarke's cashing of the check can be considered an accord and satisfaction, as "Provident in good faith tendered the Check to Clarke in full satisfaction of an unliquidated claim subject to a bona fide dispute, and Clarke obtained payment under the Settlement Check."  Pl.'s Supp. Mem. in Opp'n to Def.'s Combined Mot. to Alter or Amend J. and Mot. for Extension of Time at 2.  This Court need not examine the three elements Provident must prove to assert the affirmative defense of accord and satisfaction, *see, e.g., Parker v. Prudential Ins. Co.*, 900 F.2d 772, 776 (4th Cir. 1990), because Mr. Clarke's actions in accepting the benefits of settlement and then trying to set it aside are inconsistent with the good faith standard.  In addition, permitting a defendant to change his mind and reject a settlement after he has accepted its benefits and the plaintiff has relied upon its acceptance creates a great likelihood of prejudice to the plaintiff.  Mr. Clarke has not met the good cause standard of excusable neglect.  Allowing an extension of time to appeal would be inappropriate and contrary to law.

### III. Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion to Alter or Amend Judgment and Motion for Extension of Time.

An appropriate Order will issue.

March 4, 2008                                          /s/
Alexandria, Virginia                         James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE